Ramon **ROMERO** et al., Plaintiffs,

v.

James D. **HODGSON**, etc., et al.,
Defendants.

No. 50213–ACW.

United States District Court,
N. D. California.

Nov. 20, 1970.

---

Martin R. Glick, San Francisco, Cal., Andrew Church of Abramson & Church, Salinas, Cal., Donald C. McDaniel, McDaniel & McDaniel, Los Angeles, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., David R. Urdan, Asst U. S. Atty., for defendants.

Before HAMLIN, Circuit Judge, and ZIRPOLI and WOLLENBERG, District Judges.

### MEMORANDUM OPINION AND ORDER

PER CURIAM.

Plaintiffs herein attack the exclusion, by both California and federal statutes, of agricultural labor from the definition of "employment" for the purposes of unemployment compensation. 26 U.S.C. § 3306(c) (1), (k); Calif.Unempl.Ins.Code, §§ 625–627. Essentially, they argue that this exclusion, when considered in light of the economic and social changes since the enactment of the Federal Unemployment Tax Act, constitutes "invidious discrimination" within the meaning of the due process and equal protection clauses of the Constitution.

The state and federal defendants moved to dismiss on various procedural grounds, invoking, among other things, sovereign immunity, the limits on federal equitable jurisdiction in tax cases (28 U.S.C. §§ 1341, 2201 and 26 U.S.C. § 7421), and failure to join necessary parties under Rule 19 of the Federal Rules of Civil Procedure. These motions were denied by this Court's Order of July 9, 1970. Also denied at this time was plaintiff's motion for a preliminary injunction.

A three judge Court having been appointed under 28 U.S.C. § 2281, the matter was heard on all pending motions, including plaintiffs' motions for declaratory and injunctive relief, and defendants' motion to dismiss for failure to state a cause upon which relief could be granted.

Congress enacted the original Unemployment Tax Act in 1935 as part of the Social Security Act. The constitutionality of the Act as a whole, as well as of the exclusions from its coverage, was soon challenged in a series of cases which together developed a test of due process-equal protection rationality as deferential as any known to the law. Faced with the exclusion of agricultural employers from the tax provisions of the Act, the Supreme Court found two rationalia for the exemption: (1) "the legislature may withhold the burden of the tax in order to foster what it conceives to be a beneficent enterprise"; (2) "[a]dministrative considerations * * * [r]elatively great expense, and inconvenience of collection may explain the exemption from taxation of * * * farmers." Carmichael v. Southern Coal, 301 U.S. 495, 512–513, 57 S.Ct. 868, 874, 81 L.Ed. 1245 (1937); Steward Machine Co. v. Davis, 301 U.S. 548, 57 S. Ct. 883, 81 L.Ed. 1279 (1937); Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937).

Plaintiffs and federal defendants have entered into a stipulation of facts which together describe a veritable revolution in American agriculture. Whereas the bulk of American farms in 1935 were small family enterprises dispersed in every corner of the country, todays corporate farms are automated, computerized entities which together account for 89% of the farm employment in the United States. Farmers today must keep records for the Internal Revenue Service and the Social Security Administration, and this fact casts further doubt, according to plaintiffs, on the continuing validity of *Carmichael.*

■ The Court accepts plaintiffs argument that a legislative classification must be judged in light of today's circumstances, and that a classification deemed reasonable at the time of enactment can become quite arbitrary with the passage of time. Chastleton, etc., et al. v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841 (1924); Brown v. Board of Education, etc., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); Babbitz v. McCann, 310 F.Supp. 293 (E.D.Wis.1970); People v. Belous, 71 Cal.2d 954, 80 Cal.Rptr. 354, 458 P.2d 194 (1969).

■ But the history cited to us by plaintiffs teaches more than one lesson. The law of equal protection has undergone many changes in the past half century, and most important of these is, perhaps, the standard of deference to the legislature which came out of the turbulent thirties and which remains strong today. While many cases have shown the judiciary highly suspicious of legislative classifications which abridge what are called "fundamental" or "constitutional" rights, every presumption has run in favor of upholding laws which deal with regulation of the economy, the public health, or the collection and disbursement of taxes. Takahashi v. Fish and Game Comm., 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Semler v. Oregon State Board of Dental Examiners, etc., 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935); United States v. Maryland Insurance Corp., 91 S.Ct. 16, 27 L.Ed.2d 4 (1970).

There is something rigid about today's law regarding constitutional reasonability, courts being forced to choose between the strict standard of *Shapiro* and the highly permissive one of *Carmichael.* But however this dichotomy might seem to ignore the subtleties involved in any judgment of "reasonableness", it is an analysis which must be applied by this Court to the instant case. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), involved a statutory classification which affected "the most basic economic needs of impoverished human beings". *Id.* at

485, 90 S.Ct. at 1162. Yet *Dandridge* applied the traditional "any conceivable state of facts" test enunciated in the 1930's, and found the classification reasonable.

Thus the standard to be applied to this case is the same one utilized by the Supreme Court in *Carmichael*. And while changing times might have vitiated the argument concerning the administrative burden of including agriculture in the Act, they have not affected the other rationale found good by the *Carmichael* Court, i. e., the desire to subsidize agriculture. The Court further notes that in recent years only one significant regulatory measure has been found to violate equal protection, and that "under-inclusive" classifications have proven themselves particularly resistant to judicial scrutiny. When the legislature chooses to inaugurate a reform as sweeping as that which is represented by unemployment compensation, it is often forced to make compromises which, whether in the name of politics or economy, are often impossible of explanation in strictly legal terms. Realizing this, the Courts have refused to require that the State remedy all aspects of a particular mischief or none at all. Developments in the Law; Equal Protection, 82 Harv.L.Rev. 1065, 1084–87 (1969). See also Gonzales v. Shea, 318 F.Supp. 572 (1970). Hence the exclusion of agriculture from unemployment compensation can be seen as an indirect subsidy of a "beneficent enterprise", or as an effort to save the compensation fund from the drain which would result from the inclusion of another large "deficit industry", or even as a necessary political compromise without which it would have been impossible to inaugurate a most important reform in American institutions. Whether all of this is good policy is of course not the question before us. We can only ask if these justifications are rational by the loose standards of *Carmichael, Steward Machine,* and *Dandridge,* cit. *supra.* We conclude that they are.

Accordingly, it is hereby ordered that plaintiff Romero take nothing by his action. It is further ordered that the motion of plaintiffs for injunctive relief is denied. The Clerk is directed to enter judgment for the defendants and against the plaintiffs, and to dismiss the complaint and cause of action.

ZIRPOLI, District Judge (dissenting):

I must respectfully dissent. The Court, by its order this day entered, unreasonably extends the ruling in Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), to say that if there is "any conceivable state of facts" which *might* make the classification reasonable, the continuing exclusion of agricultural labor from the benefits of unemployment compensation is constitutional, even though the facts and considerations which prompted Congress to exclude them in 1935 no longer exist. Such interpretation would unduly limit, if not cripple, the constitutional power of judicial review of the Court. Furthermore, were I to deem the Court's interpretation of *Dandridge* to be correct, and if, as the Court concedes, "a legislative classification must be judged in the light of today's circumstances," then, consistent with the purpose of the Federal Unemployment Tax Act, there is no truly "conceivable state of facts" in or out of the record in this case upon which to found a classification which continues the exclusion of more than 1,500,000 agricultural workers from the benefits of a statutory scheme intended to correct the very evils of which they probably suffer more than any other class.

The Court, relying upon an equal protection-due process standard created in the 1930s to sustain the constitutionality of sweeping remedial legislation designed to lift this country out of a massive economic depression, found that the exclusion of agricultural workers from unemployment compensation *"can be seen* as an indirect subsidy of a 'beneficent enterprise,' or as an effort to save the compensation fund from the drain which

would result from the inclusion of another large 'deficit industry,' or even as a necessary political compromise without which it would have been impossible to inaugurate a most important reform in American institutions." (Emphasis added). I cannot agree that the above rationale exists today and that the removal of this classification is for the legislative process, not for the courts. The so-called "necessary political compromise" (entertained 35 years ago) is not and cannot be a valid consideration for a classification which would otherwise be clearly unconstitutional, and such a justification would run counter to the opinion of the Supreme Court in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed. 2d 663 (1962). "In light of today's circumstances," the finding of the Court that "today's corporate farms are automated, computerized entities who together account for 89% of the farm employment in the United States," the sound and surplus position of compensation funds nationally and in California, and the position agriculture would occupy vis-a-vis other "deficit industries," as reflected in the record in this case, it should be abundantly clear that the Court's conceived "beneficent enterprise" rationale and its "deficit industry" enterprise rationale are more imaginative than real. On such an established record and under such circumstances I cannot conclude that the Court must abrogate its responsibility and defer to the legislative process.

### I. History of Unemployment Compensation.

As the Court points out, the original Unemployment Tax Act was enacted in 1935. From its very beginnings, it was clear that the purpose of the federal scheme was not revenue raising, as such, but was to "encourage" states to take measures necessary to provide security for workers during periods of unemployment. Though ostensibly a federal taxing statute, the goal of the legislation was to create a fund for the support of unemployed workers, hopefully adminis-

tered by the states separately. In Steward Machine Company v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937), the Court sustained the constitutionality of the federal statute under attack as coercing states to enact certain legislation. In the course of its opinion, the Court made it clear that the Act was intended to promote the general welfare by taxing the employer to help compensate the unemployed. Both federal and state defendants agree that this was the purpose of the Act and numerous courts have so held. *See* Fahs v. Tree-Gold Co-op Growers of Florida, 166 F.2d 40 (5th Cir. 1948); Personal Finance Co. of Braddock v. United States, 86 F.Supp. 779 (Del.1949); Hearst Publications v. United States, 70 F.Supp. 666 (N.D. Cal.), aff'd, 168 F.2d 751 (9th Cir. 1946).

### II. History of the Agricultural Exclusion.

At the same time that the Act was challenged for being a coercive use of the taxing power, various industries covered by the Act challenged the exclusions thereunder as an unconstitutional discrimination against those covered. Carmichael v. Southern Coal, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937). The specific exclusion complained of was the agricultural exclusion.

In *Carmichael*, the Acts were reviewed in light of the broad prerogatives conferred upon Congress by the taxing power: "It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions * * * A legislature is not bound to tax every member of a class or none." Viewing the challenge as one to a "tax *qua* tax" the Court found two possible rationalia for the exclusions: (1) "[t]he legislature may withhold the burden of the tax in order to foster what it conceives to be a beneficent enterprise;" (2) "[a]dministrative considerations may explain several exemptions. Relatively great expense and inconvenience of collection may justify the exemption from taxation of domestic employers, farmers, * * * not likely

to maintain adequate employment records, which are an important aid in the collection and verification of the tax." Carmichael v. Southern Coal, *supra* at 512–513, 57 S.Ct. at 874.

Since 1935 there has been "a veritable revolution in American agriculture." The number of small family farms has steadily decreased, while major industrial farms have increased in both size and number. While some farms still pay workers in kind, the major agribusinesses are conducted in much the same way as any large corporate enterprise, being highly automated and often computerized. The federal defendant has stipulated to the fact that in 1964, 89 per cent of all hired farm workers in the United States were employed by large commercial agricultural corporations. In 1967, 72.9 per cent of California farm workers were employed on farms with ten or more employees. An additional 13.7 per cent of California farm workers were employed on farms with four to nine workers. Thus in California 86.6 per cent of all farm workers were involved in enterprises of a size clearly comparable to those which, in all other areas, are covered by unemployment compensation.[1] The need of such enterprises

for the kind of special treatment accorded them in the original act no longer exists. The administrative burden of keeping records for the tax collector is one which has already been assumed in the form of the disability and social security coverage which farmers must now extend to their workers. Furthermore, the extension of unemployment compensation to industries which, fiscally speaking, are much greater drains on the compensation fund, today makes untenable the State's argument that agriculture has been excluded as a "deficit" industry.[2]

The one remaining "rational basis" upon which the Court's decision today rests is Congressional desire to subsidize the entire agricultural industry by relieving them of the 3.2 per cent tax which would be levied against wages paid by farmers were they covered by the Act. However, to rely on this as a rational basis overlooks reality. The Unemployment Tax Act is not an industrial subsidy; it is social welfare legislation. I do not mean to suggest that Congress cannot subsidize agriculture. The statutes are replete with price support legislation and direct subsidies to farmers who agree not to grow certain crops. Indeed, it is these very subsidies which

---

1. Had the Court declared 26 U.S.C. § 3306 (c) (1) and California Unemployment Insurance Code §§ 625–627 unconstitutional, it would in effect be holding that agriculture must be treated like all other industries covered by the Act. Thus, the State's argument that there will be an intolerable burden on all small farms and family farms is untenable. 26 U.S.C. § 3306(a) defines a covered employer as one who employs four employees or more. 26 U.S.C. § 3306(c) (5) excludes from the definition of employment, services rendered by a spouse or a child under the age of 21 in the employ of his parent or parents. Cal. Unemployment Insurance Code, § 631 also excludes such family services. I do not suggest that the latter sections are unconstitutional as applied to agricultural or any other employers, and assume that they would apply to such employers. Furthermore, I offer no opinion as to the constitutionality of any provision which would exclude agricultural employers employing a greater number of employees. Such a provision would have

to be judged independently as to its rationality.

2. A "deficit industry" is one which distributes more money in unemployment compensation to unemployed workers in that industry than it produces through taxes levied against the industry. Though it is impossible to know in advance the size of the deficit that the agricultural industry would produce, estimates range between 50% and 61%. That is, employers would contribute between $ .39 and $ .50 for every dollar paid out to unemployed workers. This would result in a deficit of something between $23,000,000 and $42,000,000 annually. The fishing industry contributes only $ .18 per dollar distributed; the canning industry $ .33 per dollar distributed and the construction industry $ .44 per dollar distributed and has an annual deficit of over $46,000,000. In light of these figures, it is difficult to understand how agriculture can be rationally distinguished, on this ground, from these other industries covered by the Act.

demonstrate that the exclusion was not intended to be a subsidy.

Thus, this asserted rational basis is not in fact a rational basis for sustaining the classification. In Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), the Court held that a classification which closes a class subject to the protections of legislation can only be sustained if there is a rational basis consistent with the purposes of the legislation. In *Morey*, the legislation existed to regulate the money order business, but the classification held unconstitutional was one clearly subsidizing the American Express Company. Here the Act's purpose is to protect unemployed workers, and the exclusion acts only to subsidize agriculture. As in *Morey*, the classification cannot be supported with a rational basis consistent with the purposes of the Act, and thus violates due process and equal protection. *See also* F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920); Hargrave v. Kirk, 313 F. Supp. 944 (1970) (three-judge court).

The Court relies heavily on the recent case of Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), which upheld the scheme of maximum ceilings on welfare grants, for the proposition that even where "the most basic economic needs of impoverished human beings" is involved, a classification resting on a rational basis must be sustained. This case is not *Dandridge*. In *Dandridge*, the express goal of the statute was to distribute a finite sum of money in the most beneficial way. To do so, the State was forced to choose between limiting the "per child" payments for all families, or setting a maximum benefit ceiling for large families. The State chose the latter alternative, invoking the ability of large families to achieve "economies of scale" and thereby spread the maximum payment among all chil-

dren in the family. The choice made by the State was admittedly a hard one— arguably a socially incorrect one—but it was found to be reasonable in light of the clear goals of the statute.

Here, the subsidy argument is not reasonable in light of the Act's goal. If Congress wants to subsidize agriculture, it is free to do so by direct legislation. If Congress wants to compensate unemployed workers, all aspects of the statutory scheme must be judged for rationality in relation to this end, and not some end which Congress can admittedly achieve through other means.

### III. Judicial Restraint.

Congress and the State Legislature have considered eliminating the agricultural exemption for several years. The last several Secretaries of Agriculture and Labor have recommended that it be eliminated. Governor Reagan of California has advocated its elimination. There are bills currently in Congress and the Legislature which would end the exclusion. Implicit in the Court's opinion is the premise that this is a legislative matter, not one for the courts.[3] If there were a rational basis, consistent with the goals of the statute, I could not agree more; this Court would, under present equal protection law, be bound to uphold the exclusion rather than appear to impose its own views of what it feels is desirable.

However, current equal protection law also teaches that in the absence of a rational basis, classifications which close the class of those receiving benefits of laws cannot stand. The fact that Congress or the Legislature might at some future time choose to eliminate an unconstitutional classification does not deprive the federal courts of jurisdiction to find the classification as it exists and has existed for some time to be unconstitutional.[4]

---

3. Indeed, the cases relied upon by the Court make it clear that the Court should not interfere with legislative prerogatives. Constitutional rights and legislative prerogatives, however, are not synonymous.

4. Legislative inaction may itself be an incentive for courts to act. In Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed. 2d 663 (1962), the Court entered into a field traditionally free from judicial su-

Having concluded that the exclusion of agricultural workers from unemployment compensation is unconstitutional in that such an exclusion is without a rational basis and thus violates due process and equal protection of the law, I would grant relief consistent with today's circumstances and the intended overall objective of the statutory scheme enacted by Congress.

Choosing between the alternatives of striking both federal and state statutes in their entirety or striking only those provisions which I find offensive to the Constitution, I am of the view that the wiser course would be the latter alternative. Unemployment compensation is a major source of emergency income for 62,000,000 covered workers in the United States, including more than 1,000,000 Californians. Were a court to strike down both statutory schemes in their entirety, it would hardly accomplish the overall objective of the statutory scheme. To paraphrase Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), classifications violate due process when they close the class of those subject to the benefits of the law. In such a case, the court's job is not to further restrict the class receiving such benefits, but to open the class to those previously excluded.

Furthermore, I believe that Congress and the California State Legislature would not have intended that their entire schemes rise or fall on the strength of their weakest provisions. Too many people rely on this protection in times of need. Furthermore, Section 18 of the California Unemployment Insurance Code provides that "[i]f any provision of this

code * * * is held invalid, the remainder of the code * * * is not affected." While the federal statute does not contain a similar provision, I cannot conclude that Congress would have failed to enact the remaining provisions of the statute had they known that the sections in question would not be upheld. United States v. Jackson, 390 U.S. 570, 585, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1967).

On the record made before it, the Court should not have deferred to future legislation and in my view should have, subject to the implied qualifications above indicated in Footnote 1, declared 26 U.S.C. § 3306(c) (1), (k), and Calif. Unempl.Ins.Code, §§ 625–627 unconstitutional.

pervision—legislative reapportionment. In *Baker*, the very fact that citizens who were under-represented in the legislature, by definition lacked political impact to generate a legislative decision, prompted the Court to act. While this case is not *Baker*, it is noteworthy that farmworkers, as a class, have limited political strength. The very evils of their exclusion from unemployment—geographic instability due to the need to "follow the harvest" to maintain a somewhat steady income in a seasonal industry—makes it difficult if not impossible to become residents of a locality long enough to register as voters. If courts are ever required to act, it is when the evil complained of makes a legislative solution unlikely. Here, though elimination of the exclusion has been advocated by various administrations for years, there apparently has not been sufficient "incentive" to prompt legislative action.