**Jane DOE et al., Plaintiffs,**

v.

**James D. HODGSON, Secretary of Labor, et al., Defendants.**

**No. 72 Civ. 1816.**

United States District Court,
S. D. New York.

June 7, 1972.

Burt Neuborne, Norman Dorsen, New York Civil Liberties Union, New York City, for plaintiffs.

Whitney North Seymour, Jr., U. S. Atty., for the Southern District of New York, for Federal Defendants; T. Gorman Reilly, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., for the State of New York, for New York State Defendants; Irving L. Rollins, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

The nine plaintiffs are agricultural laborers. Using fictitious names, they have brought the somewhat unusual form of action which is now before the court on their motion for the convening of a three-judge court. The "omnibus complaint," as the United States Attorney suitably styles it, names as defendants five federal officials—the Secretary of Labor, the Commissioner of Internal Revenue, the Chairman of the N.L.R.B., the Administrator of the Labor Department's Wage and Hour Division and the Commissioner of Social Security—and three New York State officials—the Industrial Commissioner, the Director of the Division of Labor Standards, New York State Department of Labor, and the Chairman of the Workmen's Compensation Board. The impersonal complaint against these defendants is that the statutes they administer contain exclusions withholding benefits and protections from agricultural workers. The array of statutes thus assailed are the Federal Unemployment Tax Act, 26 U.S.C. § 3306 (c) (1) (k), the Fair Labor Standards Act, 29 U.S.C. § 206(a) (5), the Social Security Act, 42 U.S.C. § 409(h) (2), the New York Unemployment Insurance Act (Labor Law, McKinney's Consol. Laws, c. 31, § 511(6) (a)), the New York Minimum Wage Act (id. §§ 651(5) (b), 671(6) and 673), and the New York Workmen's Compensation Law, McKinney's Consol.Laws, c. 67, § 201(6) (A). Plaintiffs also protest "the threatened mis-application of the National Labor Relations Act (29 U.S.C. § 158(b) (4)) * * *." Invoking the jurisdiction of this court under 28 U.S.C. §§ 1331, 1343 (3) and 1361, together with 5 U.S.C. § 1009, they charge that the target statutes, individually and in their "cumulative effect," offend against the First, Fifth, Thirteenth and Fourteenth Amendments.

Plaintiffs charge that the questioned exclusions effect arbitrary and unreasonable discriminations, denying due process and equal protection; that they accomplish "an invidious discrimination between classes of laborers on racial grounds" (the agricultural labor force, their brief elaborates, having become "overwhelmingly black and chicano"), contrary to the Fifth and Fourteenth

Amendments; that the overall impact of the "systematic exclusion" they suffer creates "a system of employment so blatantly violative of fundamental rights as to render the continuation of the current operation of the migrant agricultural labor system imposed peonage in violation of the Fifth, Thirteenth and Fourteenth Amendments * * *." (Complaint par. 36.) They seek the convening of a three-judge court to "hear and determine" their charges of unconstitutionality, to grant a declaratory judgment, and, finally, under their eighth prayer, to "grant appropriate equitable relief in the nature of injunction or mandamus enforcing plaintiffs' rights and defendants' responsibilities under the First, Fifth, Thirteenth and Fourteenth Amendments * * *." [1]

As to the immediate question of a three-judge court, defendants make a powerful argument that plaintiffs have failed to plead for such relief as to require that cumbersome and expensive kind of tribunal. See Utica Mutual Insurance Co. v. Vincent, 375 F.2d 129, 131 (2d Cir.), cert. denied, 389 U.S. 839, 88 S. Ct. 63, 19 L.Ed.2d 102 (1967). With respect to both the state and federal statutes called into question, three judges must convene only if the relief sought is "[a]n interlocutory or permanent injunction restraining the enforcement, operation or execution" of the enactment.[2] For the granting or denial of merely declaratory relief, a single district judge is sufficient. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 152–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); and see Mitchell v. Donovan, 398 U.S. 427, 430–431, 90 S. Ct. 1763, 26 L.Ed.2d 378 (1970). Except for the vague penultimate prayer for "appropriate equitable relief in the nature of injunction or mandamus," plain-

tiffs nowhere indicate what, if anything, they actually want "restrained." Their difficulty is evident, of course: suffering from deprivations rather than impositions, their injuries are from benefits withheld rather than positive penalties or affronts. They do not seek the cessation of anything, except in the roundabout sense of some double negatives. They complain of injuries correctible ultimately by legislative enlargements, not by prohibitions against the enforcement of existing law. This characterization of plaintiffs' complaint does not serve, and is not meant, to minimize their plight or their grievances. Nor is it offered in entire ignorance of our law's general tendency to restrict old notions about "negative" and "affirmative" actions by government. See Rochester Telephone Corp. v. United States, 307 U.S. 125, 143, 59 S.Ct. 754, 83 L.Ed. 1147 (1939). The technical point remains something of consequence, however, when we deal with a provision for three-judge courts, which is not "a measure of broad social policy to be construed with great liberality, but * * * an enactment technical in the strict sense of the term and to be applied as such." Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941). And this is especially so when, as now, the Government, State or Federal, for the protection of which the three-judge device exists, comes before us through its responsible officers and pleads to be spared the protection.

Although this position of the defendants is a substantial one, strengthened perhaps by specific reference to some of the varying statutes plaintiffs join as objects of this action,[3] the court will assume that the prayer for relief, if that were the sole concern, would be sufficient to call for a three-judge court.

1. The ninth and last prayer is for the usual "other and further relief * * *."

2. 28 U.S.C. §§ 2281, 2282.

3. Insofar as plaintiffs might be thought to be seeking injunctions against federal tax collections or assessments, they would face the broad prohibition against such relief in 26 U.S.C. § 7421(a). The point, not in itself a major one, suggests some of the multifarious difficulties likely to arise in a lawsuit that challenges so wide an array of enactments. The decision reached today makes it unnecessary to pursue such problems.

This leaves, however, the contention that plaintiffs' case is foreclosed by controlling precedent, and that the single judge should therefore dismiss the complaint for that reason. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Utica Mutual Insurance Co. v. Vincent, supra, 375 F.2d at 130. The court has concluded that the defendants must prevail on this ground.

However it might be viewed as a legislative proposition, and however it might fare were it a new question for the courts, plaintiffs' complaint is defeated by the decision just a year ago in Romero v. Hodgson, 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678, summarily affirming 319 F.Supp. 1201 (N.D.Calif. 1970).[4] While the decision thus sustained was rendered by a divided three-judge court, and while one Justice noted his dissent from the affirmance, it seems clear that the Supreme Court's ruling concludes the merits of the case plaintiffs have brought here.[5] Plaintiffs urge several distinctions, but they are not, singly or together, persuasive. The Romero case, plaintiffs point out, concerned only unemployment compensation, while the pervasive disadvantages shown by the statutes now attacked present a more vivid, dramatic and profound case of disadvantage for agricultural workers. This would mean, for example, that Romero itself should be overruled when the same tax scheme is tied for litigation purposes to other measures, enacted at other times and serving other ends. The argument is novel and interesting. But the court perceives in it no sound basis for reconsidering at this level a recent decision of the Supreme Court following the thus far settled course of adjudging statutes singly, with an eye to their distinct rationales and asserted justifications, for purposes of constitutional tests.

Plaintiffs also argue that Romero did not deal with the argument, now made, that the agricultural exclusion effects a forbidden constriction of the right to travel. Apart from the fact that the new argument does not appear to be a powerful one, the tendering of such additional points does not warrant reexamination by a district court of a precedent that is squarely controlling in terms of its result.

Plaintiffs are on still weaker ground when they urge that Romero overlooked a point now stressed—that agricultural workers are today "overwhelmingly black and chicano," so that the exclusions in question impose "substantial disabilities upon plaintiffs along discrete and identifiable racial lines." Actually, the plaintiffs in Romero argued repeatedly to the Supreme Court that the exclusion "discriminates, albeit inadvertently, against Mexican-Americans who constitute the major California ethnic group employed in agriculture and minority groups who constitute the major ethnic and racial groups employed in agriculture throughout the United States."[6] There is, then, no valid occasion for this court to consider whether such "inadvertent" impacts, where it seems plain that the underlying legislative "judgments are rational, and not invidious," and are grounded in views "lacking in racial motivation," Jefferson v. Hackney, 406 U.S. 535, 548, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972), could require a result different from that in Romero. Cf. Braunfeld v. Brown, 366 U.S. 599, 607, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961).

The court is persuaded, in sum, that plaintiffs' federal claims are in the per-

4. Plaintiffs rely upon Local Union No. 300 v. McCulloch, 428 F.2d 396 (5th Cir. 1970), holding the validity of the National Labor Relations Act exclusion of farm workers a question substantial enough for three judges. But Romero, decided by the Supreme Court a year later, made that decision obsolete.

5. That the decision is to be viewed as being "on the merits," see, e. g., United States ex rel. Epton v. Nenna, 446 F.2d 363, 366 (2d Cir.), cert. denied, 404 U.S. 948, 92 S.Ct. 282, 30 L.Ed.2d 265 (1971).

6. Jurisdictional Statement, O.T.1970, Misc. No. 6847, p. 8; see also id. at 11.

tinent sense unsubstantial. The motion for a three-judge court is denied. The complaint is dismissed.[7]

It is so ordered.

---

**7.** As the sole ground he briefs for dismissal, the State Attorney General argues that a suit may not proceed on behalf of unidentified—i. e., fictitiously named—plaintiffs, citing Roe v. State of New York, 49 F.R.D. 279 (S.D.N.Y. 1970). The argument, in which the federal defendants join, has weight, but it is not reached as a ground of decision herein. At the court's suggestion, plaintiffs' counsel has filed a sealed statement identifying the plaintiffs. If and when the question should become a live one, the court can consider a direction that the identities be disclosed or, if that is resisted, dismissal be confronted again as an arguable alternative. The problem will arise, of course, only if and when the ruling now announced is reversed. Balancing the interests, including the plausible fear of plaintiffs that they risk reprisals, the postponement thus effected seems a fair and sufficient expedient.