**Jane DOE et al., Plaintiffs-Appellants,**

v.

**James D. HODGSON, Secretary of Labor, et al., Defendants-Appellees.**

**No. 606, Docket 72-1744.**

United States Court of Appeals, Second Circuit.

Argued March 22, 1973.

Decided May 1, 1973.

Burt Neuborne, New York City (New York Civil Liberties Union, Norman Dorsen, New York University Law School, New York City, on the brief), for plaintiffs-appellants.

T. Gorman Reilly, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. New York; Taggart D. Adams, Asst. U. S. Atty., on the brief), for federal defendants-appellees.

Stephen P. Seligman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of New York; Samuel A. Hirshowitz, First Asst. Atty. Gen., Irving L. Rollins, Asst. Atty. Gen., on the brief), for New York State defendants-appellees.

Before SMITH, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

█ Nine migrant agricultural workers, protected by pseudonyms, challenge the constitutionality of provisions in various federal and state statutes which operate to exclude them and others so situated from the beneficial provisions of social legislation in such areas as unemployment compensation, minimum hours and wages, social security and workmen's compensation.[1] Plaintiffs' complaint sought the convening of a three-judge court, a declaratory judgment, and "appropriate equitable relief in the nature of injunction or mandamus enforcing plaintiffs' rights and defendants' responsibilities under the First, Fifth, Thirteenth and Fourteenth Amendments. . . ." The United States District Court for the Southern District of New York, Marvin E. Frankel, J., refused to convene a three-judge court and dismissed the complaint, 344 F.Supp. 964 (1972), because of the controlling effect of Romero v. Hodgson, 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971), summarily affirming 319 F.Supp. 1201 (N.D.Cal.1970) (per curiam). Although we believe that as an original matter plaintiffs' basic equal protection claim merits the closest judicial attention, we conclude that under applicable precedent we should not now engage in that pursuit. Because the plight of migrant workers as portrayed in plaintiffs' complaint is so unfortunate,[2] we reach this conclusion, and consequently affirm, with considerable hesitation.[3]

In Romero v. Hodgson, *supra*, a divided three-judge court sustained the Federal Unemployment Tax Act, one of the statutes under attack here, against an equal protection challenge. Faced with the argument that the exclusion of agricultural labor from the coverage of the statute was no longer justifiable on the grounds originally relied upon by the Supreme Court in 1937,[4] the majority

---

1. The complaint challenges the Federal Unemployment Tax Act, 26 U.S.C. § 3306 (c)(1), (k); the Fair Labor Standards Act, 29 U.S.C. § 206(a)(5); the Social Security Act, 42 U.S.C. § 409(h)(2); the New York Unemployment Insurance Act, N.Y.Labor Law § 511(6)(a) (McKinney's Consol.Laws, c. 31, 1965); the New York Minimum Wage Act, id. § 651(5)(b), id. §§ 671(6), 673 (1972–73 Supp.); and the New York Workmen's Compensation Law, N.Y.Wkmn's Comp.Law § 201(6)(A) (McKinney's Consol.Laws, c. 67 1965). Plaintiffs also attack exclusion from and misapplication of the National Labor Relations Act, 29 U.S.C. §§ 152(3), 158(b) (4).

    In their briefs in this court, plaintiffs refer to only one state statute, the workmen's compensation law. In view of our disposition, we think it unnecessary to resolve any inconsistency.

2. E.g., none of the plaintiffs earns more than $3,000 per year; they are randomly subject to enforced periods of unemployment ranging up to weeks without any compensation, during which they are "reduced to utter destitution"; although subjected to serious occupational hazards posed by mechanized equipment and noxious pesticides, plaintiffs are without the disability protections of workmen's compensation laws.

3. Because we agree with Judge Frankel's resolution, we need not consider alternative objections to relief, pressed by appellees and alluded to by the district court, i. e., whether plaintiffs' prayer for injunctive relief is sufficiently concrete to merit three-judge consideration, and whether plaintiffs seek to enjoin assessment or collection of federal taxes, as prohibited by 26 U.S.C. § 7421(a). See 344 F.Supp. 967 & n. 3.

4. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 512–513, 57 S.Ct. 868, 81 L.Ed. 1245 (1937).

nevertheless sustained the exclusion, 319 F.Supp. at 1203, because it could

> be seen as an indirect subsidy of a "beneficent enterprise," or as an effort to save the compensation fund from the drain which would result from the inclusion of another large "deficit industry," or even as a necessary political compromise without which it would have been impossible to inaugurate a most important reform in American institutions.

Judge Zirpoli filed a strong dissent, arguing that the exclusion was now factually unsupportable and therefore irrational. The dissent pointed out that while administrative hardship for small farmers might have justified the original exemption of agricultural workers, "in 1964, 89 per cent of all hired farm workers . . . were employed by large commercial agricultural corporations"; in addition, unemployment compensation has been extended to other industries which "fiscally speaking, are much greater drains on the compensation fund," thus making "untenable the . . . argument that agriculture has been excluded as a 'deficit' industry" (footnote omitted) ; and, finally, the "Unemployment Tax Act is not an industrial subsidy; it is social welfare legislation." Id. at 1205. With the issues thus clearly spelled out, on direct appeal to the Supreme Court the judgment of the district court was summarily affirmed.[5]

■ Plaintiffs argue that such a disposition should not be controlling in this case. They point to the heavy Supreme Court caseload and the observations of Supreme Court scholars (including the recent report of a study group chaired by Professor Paul A. Freund) to the effect that summary disposition of cases on the appellate docket "is not a satisfactory equivalent for the judgment on the merits it is supposed to be." [6] Plaintiffs thus contend that summary affirmance is entitled to no more—or little more—precedential weight than is the denial of a petition for a writ of certiorari. However, we have ruled to the contrary. See United States ex rel. Epton v. Nenna, 446 F.2d 363, 366, cert. denied, 404 U.S. 948, 92 S.Ct. 282, 30 L. Ed.2d 265 (1971) ; Heaney v. Allen, 425 F.2d 869, 870–871 (1970) ; Port Authority Bondholders Protective Committee v. Port of New York Authority, 387 F.2d 259, 262–263 n. 3 (1967).[7] We are aware that the Ninth Circuit has stated that a summary affirmance by the Supreme Court of a case within its "obligatory appellate jurisdiction has very little precedential significance." See Dillenburg v. Kramer, 469 F.2d 1222, 1225 (1972).[8] For now, however, we continue to believe that we are bound by the Supreme Court's summary affirmances "until such time as the Court informs us that we are not." United States ex rel. Fein v. Deegan, 410 F.2d 13, 22 (2d Cir.), cert. denied, 395 U.S. 935, 89 S.Ct. 1997, 23 L.Ed.2d 450 (1969).

Plaintiffs also argue that even if the affirmance in *Romero* is entitled to precedential weight, differences between that case and this are so significant that the affirmance in the former cannot foreclose the claims made here. *Romero*, they say, challenged only one statute, while this case attacks many in an effort to establish a "pattern or prac-

5. Mr. Justice Douglas would have noted probable jurisdiction.

6. Report of the Study Group on the Caseload of the Supreme Court 26 (1972) ; see authorities cited in United States ex rel. Epton v. Nenna, 318 F.Supp. 899, 906 n. 8 (S.D.N.Y.1970).

7. Although these cases considered the stare decisis effect of a Supreme Court *dismissal*, for want of a substantial federal question, of an appeal from a state court, their reasoning applies with at least as much force to summary affirmances on direct appeals from three-judge courts. This difference in disposition is without significance, explained only by history. R. Stern & E. Gressman, Supreme Court Practice 233 (4th ed. 1969).

8. Accord, Serrano v. Priest, 487 P.2d 1241, 1264 & n. 35 (Cal.1971) (dictum).

tice" of systematic exclusion of migrants from curative social legislation. Second, plaintiffs contend that they can here demonstrate a "causal relationship" between the exclusions and deprivation of fundamental rights, e. g., association, speech, right to travel, and that strict equal protection review is thus appropriate. Finally, plaintiffs urge that *Romero* was decided prior to cases from the last Term in which the Supreme Court invested "rational basis" review under the equal protection clause with considerably more bite and realistic application than had previously been thought appropriate.

These arguments, particularly the last, are by no means frivolous. However, as to the first two, we cannot in good conscience hold that either the presence of four federal statutes under attack instead of one or the bare assertion that "fundamental rights" of migrants are jeopardized by the statutory exclusions justifies our disregarding *Romero*. As to the last argument, we have ourselves noted the apparent, post-*Romero*, trend toward a less deferential application of the "rational basis" standard of equal protection,[9] although not without some disagreement. See Boraas v. Village of Belle Terre, 476 F.2d 824 (2d Cir. 1973) (Timbers, J., dissenting from 4–4 denial of en banc reconsideration). Were we writing on a clean slate, we would take very seriously the assertion that on these facts the statutory exclusions cannot be sustained. But given *Romero*, the slate is not clean; plaintiffs must obtain any further writings on it in this case from the Supreme Court.

Judgment affirmed.

9. In particular, while the three-judge district court *Romero* majority noted "something rigid" about the choice between the strict standard of review and one "as deferential as any known to the law," 319 F. Supp. at 1202, it is precisely this sharp dichotomy which we have found considerably narrowed. See, e.g., Boraas v. Village of Belle Terre, 476 F.2d 806, 814–815 (2d Cir. 1973) ; Green v. Waterford Board of Education, 473 F.2d 629, 633–634 (2d Cir. 1973) ; City of New York v. Richardson, 473 F.2d 923, 930 (2d Cir. 1973) ; Aguayo v. Richardson, 473 F.2d 1090, 1108 (2d Cir. 1973).