In the Matter of the Application of Ronnie CHEESEMAN; Lewis Pollack; Rocco C. LaBella, Jr.; James Mann; Peter Scannell; Richard Watson; Robert Vosper; Brian Gummoe; Thomas Ryan; Richard F. O'Connell; Ambrose Burger; Stephen Kurpil; Ted Kott; Bruce Smith; James Mullen; David Gundrum; Individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

Hugh CAREY, as the duly elected Governor and Chief Executive Officer of the State of New York; The Governor's Office of Employee Relations; Meyer S. Frucher, as Director of the New York State Office of Employee Relations; Edward Regan, as the Comptroller of the State of New York; Thomas Coughlin, as the Acting Director of the New York State Department of Correctional Services; James A. Prevost, as the Commissioner of the Office of Mental Hygiene; Clifton R. Wharton, as the Chancellor of the State University of New York; James C. O'Shea, as the Commissioner of the Office of General Services of the State of New York, Defendants-Appellees.

No. 1182, Docket 80–7142.

United States Court of Appeals, Second Circuit.

Argued June 9, 1980.

Decided July 17, 1980.

Richard R. Rowley, Rowley & Forrest, P.C., Albany, N.Y., for plaintiffs-appellants.

John Q. Driscoll, Asst. Atty. Gen. of the State of New York, Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of New York, Albany, N.Y., William J. Kogan, Asst. Sol. Gen. and Michael F. Colligan, Asst. Atty. Gen., Albany, N.Y., of counsel), for defendants-appellees.

Before FRIENDLY and MANSFIELD, Circuit Judges.*

FRIENDLY, Circuit Judge:

This action was brought by employee members of the Security Services Unit of the New York Inspection, Security and Law Enforcement Employees, District Council 82, to enjoin the State, on federal constitutional grounds, from deducting from their wages the penalty for strikes provided by § 210 of the New York Civil Service Law, commonly known as the Taylor Law.[1]

---

* Hon. William O. Mehrtens, Senior District Judge for the Southern District of Florida, sitting by designation, participated in the hearing of this appeal. Judge Mehrtens voted in favor of the disposition herein made, but due to his subsequent illness and death did not have an opportunity to review this opinion. Accordingly the appeal is being disposed of by the other two judges as provided in Second Circuit Rule § 0.14(b).

1. Section 210(1) prohibits any public employee or employee organization from engaging in a strike. Subdivision 2(a) provides, *inter alia*, that any employee who violates subdivision 1 "may be subject to removal or other disciplinary action provided by law for misconduct." Subdivision 2(b) establishes a presumption that:

 For purposes of this subdivision an employee who is absent from work without permission, or who abstains wholly or in part from the full performance of his duties in his normal manner without permission, on the date or dates when a strike occurs, shall be presumed to have engaged in such strike on such date or dates.

Subdivisions 2(d), (e), (g), and (h) provide:

 (d) Determination. In the event that it appears that a violation of this subdivision may have occurred, the chief executive officer of the government involved shall, on the basis of such investigation and affidavits as he may deem appropriate, determine whether or not such violation has occurred and the date or dates of such violation. If the chief executive officer determines that such violation has occurred, he shall further determine, on the basis of such further investigation and affidavits as he may deem appropriate, the names of employees who committed such violation and the date or dates thereof. Such

Some 6,500 members of the 11,000 member Unit were determined to have engaged in a work stoppage lasting 16 days in April and May, 1979, which, as the district court found, had caused considerable disruption, particularly in prisons, and had required the mobilization of the National Guard. Class certification was granted. F.R.Civ.P. 23(c)(1). The complaint focused on the lack of a pre-deduction hearing to determine whether an employee's absence from work on a particular day or days was in fact due to his having engaged in a strike declared illegal by the Taylor Law, § 210(2)(g). Plaintiffs have also brought two actions in the New York courts to challenge the proposed deductions, in which they have refrained from raising federal constitutional claims.[2]

The present action was instituted against a background of challenges to the Taylor Law, all predicated on substantially the

---

determination shall not be deemed to be final until the completion of the procedures provided for in this subdivision.

(e) Notice. The chief executive officer shall forthwith notify each employee that he has been found to have committed such violation and the date or dates thereof and of his right to object to such determination pursuant to paragraph (h) of this subdivision; he shall also notify the chief fiscal officer of the names of all such employees and of the total number of days, or part thereof, on which it has been determined that such violation occurred. Notice to each employee shall be by personal service or by certified mail to his last address filed by him with his employer.

(g) Payroll deductions. Not earlier than thirty nor later than ninety days following the date of such determination, the chief fiscal officer of the government involved shall deduct from the compensation of each such public employee an amount equal to twice his daily rate of pay for each day or part thereof that it was determined that he had violated this subdivision; such rate of pay to be computed as of the time of such violation. In computing such deduction, credit shall be allowed for amounts already withheld from such employee's compensation on account of his absence from work or other withholding of services on such day or days. In computing the aforesaid thirty to ninety day period of time following the determination of a violation pursuant to subdivision (d) of paragraph two of this section and where the employee's annual compensation is paid over a period of time which is less than fifty-two weeks, that period of time between the last day of the last payroll period of the employment term in which the violation occurred and the first day of the first payroll period of the next succeeding employment term shall be disregarded and not counted.

(h) Objections and restoration. Any employee determined to have violated this subdivision may object to such determination by filing with the chief executive officer (within twenty days of the date on which notice was served or mailed to him pursuant to paragraph (c) of this subdivision) his sworn affidavit, supported by available documentary proof, containing a short and plain statement of the facts upon which he relies to show that such a determination was incorrect. Such affidavit shall be subject to the penalties of perjury. If the chief executive officer shall determine that the affidavit and supporting proof establishes that the employee did not violate this subdivision, he shall sustain the objection. If the chief executive officer shall determine that the affidavit and supporting proof fails to establish that the employee did not violate this subdivision, he shall dismiss the objection and so notify the employee. If the chief executive officer shall determine that the affidavit and supporting proof raises a question of fact which, if resolved in favor of the employee, would establish that the employee did not violate this subdivision, he shall appoint a hearing officer to determine whether in fact the employee did violate this subdivision after a hearing at which such employee shall bear the burden of proof. If the hearing officer shall determine that the employee failed to establish that he did not violate this subdivision, the chief executive officer shall so notify the employee. If the chief executive officer sustains an objection or the hearing officer determines on a preponderance of the evidence that such employee did not violate this subdivision, the chief executive officer shall forthwith restore to the employee the tenure suspended pursuant to paragraph (f) of this subdivision, and notify the chief fiscal officer who shall thereupon cease all further deductions and refund any deductions previously made pursuant to this subdivision. The determinations provided in this paragraph shall be reviewable pursuant to article seventy-eight of the civil practice law and rules.

2. The first of these actions sought to compel the State to take the Taylor Law's "two-for-one" deductions from, and only from, leave time accrued by the striking employees. This request, which was apparently based on equitable considerations, was rejected in a brief memorandum opinion by the state Supreme Court. *New York State Inspection, Security and Law Enforcement Employees, Dist. Council 82 v. State of New York*, 101 Misc.2d 1042, 422 N.Y. S.2d 561 (S.Ct.1979). The second action, also brought before the Supreme Court of Albany

same grounds, which stretches back to 1972.[3] In an action initially entitled *Sanford v. Rockefeller*, 32 N.Y.2d 788, 298 N.E.2d 681, 345 N.Y.S.2d 543 (1973), the New York Court of Appeals affirmed an order of the Appellate Division rejecting a constitutional challenge to the deduction procedure, 40 A.D.2d 82, 337 N.Y.S.2d 688 (3d Dep't 1972). The Supreme Court, *sub nom. Sanford v. Wilson*, 416 U.S. 977, 94 S.Ct. 2377, 40 L.Ed.2d 755 (1974), vacated the judgment of the Court of Appeals and remanded for further consideration in light of *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). On remand the Court of Appeals, in a thorough opinion by Judge Gabrielli, adhered to its determination, with one judge dissenting, 35 N.Y.2d 547, 324 N.E.2d 113, 364 N.Y.S.2d 450 (1974). On a renewed appeal the Supreme Court dismissed "for want of substantial federal question", *Sanford v. Carey* and *Collins v. Carey*, 421 U.S. 973, 95 S.Ct. 1972, 44 L.Ed.2d 465 (1975).[4]

Despite this the plaintiffs here moved on a broad front for a temporary injunction against the deductions. In an opinion filed on September 8, 1979, the district judge

concluded that "it does not seem likely that plaintiffs will succeed on the merits of their more general claims". He approved the reasoning in the Court of Appeals' second *Sanford* decision and noted the Supreme Court's dismissal of the appeal for want of a substantial federal question. This, as held in *Hicks v. Miranda*, 422 U.S. 332, 343–45, 95 S.Ct. 2281, 2288–2289, 45 L.Ed.2d 223 (1975), was binding upon him in any event.[5] He found no legal significance in plaintiffs' primary attempts to distinguish *Sanford*: the arguments that the deprivations in that case were calculated on the basis of two strike days while the fines in the present action might be for an average of 12 strike days,[6] and that the strike here at issue had involved more employees than the *Sanford* walk-out with the consequent probability that larger numbers of objections would be filed. However, he found possible merit in one of plaintiffs' contentions, namely, that absent a pre-deduction hearing, due process might be violated by the *combined* effect of the magnitude of the deductions in this case, the likelihood of erroneous strike determinations, *and* the rapid pace of the penalty deductions (with

County, resulted in a stipulation of settlement, dated October 31, 1979, in which, *inter alia*, the State agreed to exclude regularly-scheduled days off from the total of days on which employees were determined to have struck.

3. Although challenges to the Taylor Law penalties have traditionally been litigated in the New York courts, state employees have turned to the federal courts with increasing frequency over the past two years. This action is the latest in a series of five recent federal cases challenging the Taylor Law on due process grounds. See *Tepper v. Galloway*, 481 F.Supp. 1211 (E.D.N.Y.1979); *Local 2021 of Dist. Council 37 v. N.Y.C. Off-Track Betting Corp.*, 79 Civ. 6005 (S.D.N.Y. Nov. 1979); *Wolkenstein v. Reville*, 77 Civ. 618 (W.D.N.Y. June 11, 1979); *Starrs v. Bock*, 12 P.E.R.B. 7501 (S.D.N.Y. 1978). See also Goldberg, Taylor Law Penalties and Federal Courts, *N.Y.L.J.*, May 13, 1980, at 1, 28.

4. Three Justices would have noted probable jurisdiction and set the case for oral argument.

5. The Supreme Court quoted with approval this court's statement in *Port Authority Bondholders' Protection Committee v. Port of New York Authority*, 387 F.2d 259, 263 n.3 (1967) that

unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise.

and our even stronger statement in *Doe v. Hodgson*, 478 F.2d 537, 539, *cert. denied, sub nom. Doe v. Brennan*, 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973), that the lower courts are bound by summary decisions by the Supreme Court "until such time as the Court informs [them] that [they] are not."

6. Although the district court spoke of 16 days —i. e., the duration of the strike—in its September 8, 1979 opinion, a stipulation of settlement between the parties in a related state court action subsequently exempted regularly-scheduled days off from the total number of days counting toward the penalty deductions, see note 2 *supra*. The State's brief notes, at p. 4, that the number of days off excluded from the calculation of employee deductions averaged four, and varied from two to six. Thus the average employee was penalized under the two-for-one formula for 12 strike days.

attendant harm to employee cash flow) that was seemingly mandated by the requirement that deductions be made not earlier than 30 days or later than 90 days after the chief executive officer of the appropriate department determines that an employee has struck illegally, § 210(1)(g).[7] For reasons outlined in his opinion he entered an order allowing the State to deduct up to two days' wages per pay period.[8] Neither side appealed from this decision.

The issuance of the temporary injunction was followed by additional argument, presentation of evidence, and a further opinion, 485 F.Supp. 203, issued on March 11, 1980, which recited at the outset that:

> [t]he parties have agreed that their submissions to date should be treated as complete, and that a final opinion and judgment is now appropriate,

*id.* at 206. After a scholarly discussion of several venue issues, not now before us, the March 11 opinion turned to defendants' request for abstention. Although rejecting most of the grounds urged in support of this request,[9] the district judge concluded that a recent state court decision, *Local 2021 of Dist. Council 37 v. N.Y.C. Off-Track Betting Corp.*, Index No. 6065–79 (S.Ct.N.Y. Co., Nov. 11, 1979) (appeal pending), argued for *Pullman*-type abstention[10] from final determination of the narrow due process issue that had prompted his preliminary

injunction, 485 F.Supp. at 220. He noted that a federal court had abstained from deciding a similar rate-of-deduction issue in the *Off-Track Betting* litigation, see *Local 2021 of Dist. Council 37 v. N.Y.C. Off-Track Betting Corp., supra* note 3, and that shortly thereafter, Justice Okin of the Supreme Court of New York County issued an opinion extending Taylor Law deductions over a period longer than the statutorily-prescribed 60-day interval, on the basis that principles of equity empowered New York courts "to ameliorate a harsh and unduly burdensome enforcement of a particular law," *Local 2021 of Dist. Council 37, supra,* at 2. Judge Sofaer reasoned that if this holding were followed by other New York courts, it would eliminate the only potential due process claim against the Taylor Law enforcement provisions, and thus leave the federal courts with nothing to decide. He went on to say:

> One modification of ordinary *Pullman* abstention practice does seem appropriate, however. While *Pullman* abstention normally requires the federal court to retain jurisdiction in case the need to decide the federal question is not obviated by state court action on state law grounds, a dismissal here seems proper. The deduction schedule established by the preliminary injunction should by now be complete. Nothing therefore remains for

---

7. Compare *Tepper v. Galloway, supra,* 481 F.Supp. at 1219–24 (refusing to extend schedule of penalty deductions and dismissing complaint although striking teachers were deprived of pay for entire "first half of the school year."). In this case, the state had agreed that the withholdings should be made in four equal installments during four two-week pay periods.

8. Evidently reflecting on employee attempts in the state courts to escape a portion of their Taylor Law deductions by asserting that these had not been made within the 90-day statutory period established by § 210(2)(g), see, e. g., *Matter of De Lury v. Beame,* 49 N.Y.2d 155, 400 N.E.2d 333, 424 N.Y.S.2d 393 (1979); *St. Pierre v. Board of Educ. of Cent. School Dist. No. 1,* 40 A.D.2d 71, 337 N.Y.S.2d 706 (3d Dep't 1972); *Delea v. Board of Educ., Bellmore-Merrick Cent. High School Dist.,* 86 Misc.2d 988, 384 N.Y.S.2d 615 (S.Ct. Nassau Co.), aff'd, 53 A.D.2d 613, 385 N.Y.S.2d 942 (2d Dep't 1976), Judge Sofaer noted that his order compelled

the State to defer deductions, and hence "no affected employee would be permitted to claim that deductions made after the 90 day statutory period are illegal."

9. In the course of this discussion the judge pointed out, as he had in his opinion on the preliminary injunction, that "plaintiffs brought this suit as a broad challenge to the Taylor Law's penalty provision, arguing that the deductions of an amount as great as that imposed after their strike violated due process," 485 F.Supp. at 217, that defendants "properly argued that the broad challenge had been rejected in the state courts, and in the Supreme Court as well," *id.,* and that "plaintiffs' efforts to distinguish *Sanford* as involving a *de minimus* penalty, and as involving a determination challenged by far fewer employees, were not persuasive" [footnotes omitted], *id.*

10. *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

federal courts to correct in this controversy, except perhaps on appeal from this ruling, which a dismissal should facilitate. [citation omitted.] 485 F.Supp. at 220. Accordingly he dismissed the complaint "on the ground that it would be improper to decide the constitutional question presented." *Id.* at 221. This appeal followed.

 Although the briefs have focused on the propriety of the district court's abstention on the issue whether due process mandates a pre-deduction hearing in light of the combined size and rate of deductions that were threatened in this case, that question is not truly before us. By the time the district court rendered its final opinion, the deductions under the extended schedule imposed by it had all been effected and plaintiffs could gain nothing from having the injunction made final. The question whether this should be done had thus become moot; there was no occasion for the judge to consider abstaining on the point which he had thought to warrant a temporary injunction; and, absent any other grounds for relief, the case was ripe for dismissal. Indeed, it must have been his perception of mootness that caused the judge to consider the appropriate course to be dismissal rather than the normal procedure in *Pullman*-type abstentions, to wit, a stay pending state court determination of the relevant issues of state law. See 6A Moore, Federal Practice ¶ 57.13 at 57–121, 122 (1979 ed.) ["if the mooted issues are controlling the trial court should dismiss the action."]; *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Although the combination of circumstances that led to the grant of the temporary injunction in this case may arise in strikes by other New York public employees, plaintiffs-appellants have no stake in that. Moreover, any grant

of similar relief, as to the propriety of which we express no opinion, would necessarily turn on the particular facts—as well as on how New York law develops in consequence of the *Off-Track Betting Corporation* case.[11] The rate-of-deduction issue thus now lacks one of the requisites of a live controversy, namely, a "real and immediate" threat of injury faced by any member of the plaintiff class. See *Sosna v. Iowa*, 419 U.S. 393, 402–03, 95 S.Ct. 553, 558–559, 42 L.Ed.2d 532 (1975). There is little indication that these employees will again face Taylor Law penalties of equal or greater severity. Having received all the relief due them, even assuming *arguendo* that they are right on the merits of the narrow rate-of-deduction issue, it ill behooves plaintiffs to insist that further judicial effort be expended upon this claim.

 All that remains is appellants' contention that the complaint set forth other constitutional challenges which are not adversely resolved by the Supreme Court's dismissal of the appeal in *Sanford*. The first of these, that doctrinal developments since the dismissal of the *Sanford* appeal indicate that the Court would now reach a different result, is clearly without merit. One of the cases that appellants invoke, *North Georgia Finishing Co. v. Di-Chem Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), antedated *Sanford*; indeed, it was cited in the jurisdictional statement of the Sanford plaintiffs, p. 10. The other, *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), turned on the *total* failure to give any notice of the availability of a procedure to contest the proposed termination of an essential utility service. Appellants do not mention the most important decision on pre-termination hearings since the dismissal

---

11. Appellants cite a number of New York cases in an effort to show that the *OTB* case is an aberration. See, e. g., *Matter of De Lury v. Beame, supra*; *St. Pierre v. Board of Educ. of Cent. School Dist. No. 1*, 66 Misc.2d 634, 321 N.Y.S.2d 995 (S.Ct. Saratoga Co., 1971), modified, 40 A.D.2d 71 (3d Dep't 1972); *Weymer v. Board of Educ. of Connetquot Cent. School Dist. No. 7*, Index No. ——— (S.Ct. Suffolk Co., Mar. 3, 1971), aff'd, 38 A.D.2d 895, 330 N.Y.

S.2d 777 (2d Dep't 1972). Although these opinions contain language to the effect that § 210(2)(g) is to be strictly construed, they involve employee objections to penalty deductions allegedly made before 30 or after 90 days from the chief executive officer's determination of a violation. Nothing in them suggests that if the employees wish to have the deductions extend beyond 90 days, the courts are without power to grant such requests.

of the *Sanford* appeal, to wit, *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which held that no such hearing was constitutionally required before the termination of Social Security disability payments provided to completely disabled workers—surely a more serious deprivation, if erroneously made, than the loss of two days' pay for each day not worked of a two-and-a-half week strike. Moreover, the *Eldridge* decision, which laid down guidelines for general application, was rendered despite a showing that "the delay between the actual cutoff of benefits and final decision after a hearing exceeds one year," 424 U.S. at 342, 96 S.Ct. at 906, and that a significant proportion of appealed decisions (58.6%) were reversed as a result of the post-termination hearings, 424 U.S. at 346–47, 96 S.Ct. at 908.[12] The post-*Sanford* trend has thus been to limit and refine the reach of the protean due process principles announced in earlier cases such as *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which themselves were held insufficient to present a substantial constitutional question in *Sanford*.

Like the district judge, we see no constitutional significance in the fact that the strikers here chose to violate the law for sixteen days rather than for only two as in *Sanford*. Although the Court indicated in *Goss v. Lopez*, 419 U.S. 565, 584, 95 S.Ct. 729, 741, 42 L.Ed.2d 725 (1975), that longer periods of suspension from school might demand more elaborate procedures than what was there required for suspensions of ten days or less, there is no basis for assuming that the Court meant this to apply to a situation where the student had engaged in a number of discrete although similar acts,

each entailing a suspension of ten days or less. We likewise see no significance of constitutional magnitude in the larger number of hearings here requested, with attendant possibility of greater delay; the jurisdictional statement in *Sanford* had rung the changes on the theme of delay (pp. 18–19), as well as on that of the possibility of error in the deduction decision (p. 20), and it is always open to a union to inflate the figures by filing baseless objections. The claim that § 210(2)(g) deprives employees of equal protection by denying a pre-deduction hearing because § 210(3) affords a union a hearing before it loses the privileges of recognition and dues check-off afforded by § 208, borders on the frivolous.

There was equally little merit in the argument that statistics for the years 1969–78 demonstrate that the Taylor Law was ineffective in preventing or shortening strikes by public employees. Apart from the fact that the bare figures prove nothing, the effectiveness of the Taylor Law is a question of policy for the New York legislature, and not for the federal courts. Moreover, the figures shed no light on what the situation would have been in those years if the Taylor Law had not been in place.

Since the only constitutional attack having any possible merit which was not foreclosed by the dismissal in *Sanford* had become moot, the district court was bound to dismiss the complaint, whether its views with respect to abstention were correct or not. Compare *Brown v. New York City Transit Authority*, S.D.N.Y. 80 Civ. 2912, dated June 4, 1980 (Lowe, J.). We therefore remand with directions to dismiss the complaint on the merits.

---

12. In contrast to the 58.6% figure, the "overall" reversal rate in *Eldridge* resulting from post-termination hearings was only 3.3%, 424 U.S. at 346, 96 S.Ct. at 908. The discrepancy between this and the 58.6% rate arose from the fact that only a fraction of all terminations were appealed, and of those appealed, many were reversed during administrative reconsideration prior to the post-termination hearing. *Id.* The record in the instant case contains no information on the proportion of reversals that typically result from post-deduction hearings, or of the proportion of hearings in which employees plan to contest only a few days, or even a few hours, of the period in which they are determined to have been on strike. In the sampling of employee affidavits contained in the record, putative strikers contest between three days and the entire period (typically 15 days) during which they were determined to have been on strike.